|  |  |
|---|---|
| 1 | IN THE UNITED STATES DISTRICT COURT |
|  | FOR THE DISTRICT OF COLORADO |
| 2 |  |
|  | Civil Action No. 22-cv-1685 |
| 3 |  |
|  | ROCKY MOUNTAIN GUN OWNERS, et al., |
| 4 |  |
|  | Plaintiff, |
| 5 |  |
|  | vs. |
| 6 |  |
|  | TOWN OF SUPERIOR, |
| 7 |  |
|  | Defendant. |
| 8 |  |

9

**REPORTER'S TRANSCRIPT**

10          TELEPHONIC STATUS CONFERENCE

11 _____

12          Proceedings before the HONORABLE RAYMOND MOORE, Judge,

13 United States District Court for the District of Colorado,

14 occurring at 10:30 a.m., on the 29th day of July, 2022, in

15 Courtroom A601, United States Courthouse, Denver, Colorado.

16          TAMMY HOFFSCHILDT, Official Reporter
           901 19th Street, Denver, Colorado 80294
17      Proceedings Reported by Mechanical Stenography
           Transcription Produced via Computer
18                    **APPEARANCES**

19          Barry Kevin Arrington, Arrington Law Firm, 4195
Wadsworth Boulevard, Wheat Ridge, CO 80033 appearing for the
20 Plaintiff.

21

22          Gordon Lamar Vaughan, Vaughan & DeMuro-Colorado
Springs, 111 South Tejon Street, Suite 545, Colorado Springs,
23 CO 80903 appearing for the Defendant.

24

25

1            *   *   *   *   *

2               **P R O C E E D I N G S**

3     (In open court at 10:41 a.m.)

4      *THE COURT:* Please be seated. All right. 22-cv-1685,

5 Rocky Mountain Gun Owners, et al, versus Town of Superior. I'm

6 here on a status conference, which I set, because it was set on

7 short notice, certain counsel have attempted to appear via VTC.

8       I have a visceral dislike of video telephone

9 conference court proceedings. This is why. It's failed. It

10 seems like something is going to fail, and I think that these

11 various buzzes that we're hearing are other counsel, because

12 the defendant's counsel, there have been various counsel that

13 have tried to or were trying to attend via VTC and/or phone.

14       It is what it is. I have one body for each side, so

15 we will go forward. My understanding is that plaintiff's

16 counsel appears telephonically.

17       Would you enter your appearance, sir?

18      *MR. ARRINGTON:* Yes, good morning. Barry Arrington.

19      *THE COURT:* Good morning to you, sir. I have four

20 names, here because four people were supposed to be here, I

21 have got a 25 percent chance of getting it right. Let me not

22 guess. Sir.

23      *MR. VAUGHAN:* Your Honor, Gordon Vaughan, appearing on

24 behalf of the defendant, Town of Superior. All right.

25       *THE COURT:* I don't know what the expectation of the

1   parties is.  I just want to get some explanation on the record,

2   so we all understand what's going on.  Originally, there was a

3   motion -- well there was a Complaint filed, and along with that

4   a motion for a TRO and a preliminary injunction, and I am not,

5   in any way, being critical, but the TRO was filed and my

6   chambers would receive some communications from counsel for one

7   side or the other, kind of noting, the potential availability.

8   The problem was of course, that the availability that was being

9   suggested was right up on the edge of when this would go into

10  effect, and it was also the problem that a TRO is typically

11  decided on the basis of the submissions of the party seeking

12  the TRO, and it's not the contested hearing that is the

13  preliminary injunction hearing.

14          So I issued the TRO, and at the same time that I did

15  that, I set the preliminary injunction hearing for next week,

16  because Rule 65 says I have to do so within 14 days, and then I

17  set this matter for a status conference.  My philosophy is not

18  necessarily *build it and they will come*, but it is *set it and*

19  *they will talk*, and in fact, I set it, for next week, set today

20  for status conference, and my anticipation and hope was that

21  there would be some communication between the parties that

22  might be fruitful to the development of this case, because,

23  while all cases are important, even the smallest dollar amount

24  for the litigants involved, I don't think it is a surprising

25  statement to have me say this is an important matter, and

1    should be handled in a way that does -- that permits each side

2    to fully inform the Court, and the Court to be fully informed

3    in making its decision, and in light of *Bruen's* recency and 14

4    days, required by Rule 65, it wasn't going to work real well,

5    unless reason prevailed; and what I mean by that is, that Rule

6    65 does permit me to set it -- set the preliminary injunction

7    past the 14 days, in other words to extend the temporary

8    restraining order with the consent of the adverse party, in

9    this case, the Town of Superior, and the Town of Superior has

10   filed a motion for continuation of the preliminary injunction

11   hearing, which I interpret as consenting to continuation of the

12   TRO through the preliminary injunction ruling.

13           Counsel is nodding in the affirmative, and that's what

14   I intend to do, with the consent of the adverse party.  So,

15   that is what I was hoping would occur, and what has occurred,

16   and there are some thing that we can do this morning, but they

17   are few in number, because I'm not trying to advance or -- I'm

18   not trying to decide anything on the merits, today.

19           The first thing I wanted to make sure of, is that the

20   record reflect that, to the extent that the TRO was originally

21   ... issued, against not only the Town of Superior but also

22   Joe Pelle, in his capacity as the Sheriff of Boulder County,

23   that the -- the docket should reflect that I order that the TRO

24   be dissolved, as it pertains to the sheriff of Boulder County.

25   The reason I do that is an amended complaint has recently been

1   filed that drops him as a party, and since the litigation is

2   not going forward; with respect to him, I think, as a technical

3   matter, it's probably dropped anyway, and nothing that I'm

4   doing and saying is dissolved, as to him, in any way impacts my

5   ruling as it pertains to the Town of Superior, but I just think

6   we're all cleaner, in terms of the record, if I do that.

7           Is there any objection to that, Mr. Arrington?

8           MR. ARRINGTON:  No, sir.

9           THE COURT:  Mr. Vaughan?  You can stay seated.

10          MR. VAUGHAN:  No, Your Honor.

11          THE COURT:  All right.  The second thing that I want

12   to do is that I mentioned, earlier, that there was a Motion For

13   Continuation Of The Preliminary Injunction Hearing, which is

14   currently set for next week.  Well, I'm going to end that

15   setting, by ordering that that be vacated.  And, in addition to

16   the reasons I have already stated for why I think a more

17   reasoned schedule is necessary, I'm aware of the fact that the

18   Town of Superior is in contact with other -- well, no

19   disrespect to Mr. Vaughan, but they are also seeking to get

20   involved additional counsel from out of state that, I don't

21   know if this is the right description of them or not, but are,

22   quote, well-versed in the Second Amendment, let's say, and

23   obviously that also takes some time to identify and get those

24   people involved.

25          But anyway, part of the motion was a motion -- a

1    request that any answer in this case be continued until after

2    the PI.  I'm going to deny that, and say that the answer should

3    be -- now mind you this, there's been an Amended Complaint very

4    recently.  The answer should be filed in accordance with the

5    rule.  Of course, if there needs to be a more normal, air

6    quotes, extension, requested, go ahead and do that.  I will

7    refer it to the Magistrate Judge.  I don't know which

8    Magistrate Judge will be drawn to it, but I just asked my staff

9    to do a referral for the types of things that we normally refer

10   down to the Magistrate Judge.

11          The next thing is that I'm assuming these lawyers that

12   I'm referring as *Out of state, Second Amendment people*, will be

13   entering some time reasonably soon.  In fact, I believe that at

14   least some -- some of them were planning on being on the line

15   until the lines crapped out.

16          *MR. VAUGHAN:*  Yes, Your Honor.  I think that at least

17   two entered appearances, yesterday.

18          *THE COURT:*  Okay.

19          *MR. VAUGHAN:*  But there's -- as the Court knows,

20   there's a process for getting admitted and they are in the

21   process of accomplishing that.

22          *THE COURT:*  If there's any difficulty with that, I'm

23   not someone that likes to stand on guarding the gate, and so if

24   there's some difficulty with that, let me know, because, again,

25   that's a procedural matter that -- I'm not suggesting is not

1    important, but I want to get on with it, as opposed to the ...

2    dealing with the preliminary procedural stuff.

3         I don't think there will be a problem, but if there

4    is, let me know.

5         The next thing that I wanted to do -- and obviously

6    I'm stalling, to some extent, in terms of answering the

7    question that you want to know, which is, well, wait, when --

8    so if you move the prelim, when am I setting it?  I will get to

9    that.

10        I think building anticipation is, I don't know,

11   perhaps useful.  My practice standards have a page limit for

12   pleadings, and I want to lift those page limits, to a degree,

13   and say, with respect to the preliminary injunction hearing,

14   obviously, I will take briefing, and I will set the schedule,

15   momentarily, from the Town and then a response from plaintiff,

16   rather than the more limited page limits that are set within my

17   practice standards.  I'm going to give each side 50 pages.

18        Now, having said that, let me just say a couple of

19   things; number one, I'm doing it not because I want everyone to

20   use up every single line on those 50 pages, but I do think

21   that, you know, there are historical matters that need to be

22   gone into.  There is analysis of *Bruen* that needs to be gone

23   into, and it may be that those pages are necessary.

24        I will also say that the reason that there's a page

25   limit is to force conciseness on counsel, and obviously, I

1   would prefer that.

2         Counsel will do whatever counsel is wont to do, but if

3   one sees 50 pages as an opportunity for, shall we say, I don't

4   know, political speech or position, such things have as much

5   impact on me as a spitball on an elephant's butt, and so I

6   would not focus on soapboxing from either side.  I want to see

7   analysis of the law, and that's why I'm giving people the 50

8   pages.  It's not so that they can expound their various

9   positions.  I think I know what each side's various positions

10  are, and I don't need 50 pages or 50 words to figure that out.

11        So, what that leaves us, is well ... when are we going

12  do this?  And frankly, I know what the motion says.  I think

13  that it is a little long, and here is the schedule that I'm

14  going to impose.  The Town's response and opposition to the

15  Motion For Preliminary Injunction is due September 30.  The

16  Plaintiff's Reply, in support of the Motion For Preliminary

17  Injunction is October 21.  The preliminary injunction hearing

18  I'm setting for November 8 and 9 of this year.  I don't really

19  believe that there's going to be two days' worth of testimony,

20  perhaps, but I want to make sure that there's enough, so that

21  people can build their record; although much of this can be,

22  obviously, submitted in the form of affidavits and things of

23  that nature.

24        If, in fact, there's some testimony that is needed, I

25  want also to make sure that I have enough time to hear from

1    each side, in terms of argument on the preliminary injunction,

2    and so, I'm not, necessarily, expecting a two-day hearing, but

3    by the same token, I'm trying to, as I said, at the outset,

4    make sure that I have, if you would, given sufficient time, so

5    that it can get adequate and appropriate treatment, given the

6    the significance of the issues.

7          So, that's all I really wanted, other than to get

8    everyone together, and only partially succeeded in that.

9          Let me ask, starting with -- I don't really have

10   anything else on my agenda, so to speak.  Mr. Arrington, is

11   there anything else that you think we need to talk about while

12   we happen to be, here, together, today?

13         *MR. ARRINGTON:*  Your Honor, those are the issues that

14   I anticipated getting instructions on, and I appreciate the

15   instructions, and nothing else from the plaintiffs.

16         *THE COURT:*  All right.  And we each were deprived of

17   the opportunity of seeing each other, but our equally melodious

18   voices have been heard by all.

19         Mr. Vaughan, sir, anything?

20         *MR. VAUGHAN:*  Two items, Your Honor.

21         *THE COURT:*  Okay.

22         *MR. VAUGHAN:*  With regard to the extension of the

23   temporary restraining order, under that section that the Court

24   issued an order, 10-9-40, there are some weapons that are not

25   firearms that are included in that, and Mr. Arrington and I

1    have had that conversation and so, we think we would like to --

2    to work on that and submit to the Court some modifications, so

3    that it doesn't restrict those --

4         THE COURT:  I'm aware of that, and I am aware that

5    there's a severability provision, as well.  I just didn't want

6    to eat into that.  I mean, I think there's something like brass

7    knuckles...

8         MR. VAUGHAN:  Yes, sir.

9         THE COURT:  And while, I clearly don't think that, you

10   know, brass knuckles created the same level of concern as some

11   of these other items.  If the two of you can get together and

12   identify a list of those items to me, I will dissolve the TRO,

13   with respect to that -- to those items, with the consent of the

14   parties.  And frankly, the PI needn't address those issues

15   either.  There's no reason to be talking about brass knuckles,

16   so...

17        MR. ARRINGTON:  Your Honor, if I might suggest an

18   alternative, because there's a fairly long list of things that

19   the order applies to, and the challenge is fairly narrow.  So

20   instead of a proposal that the TRO does not apply to these,

21   what I think might be more advantageous, that the TRO does

22   apply to these, and that would be the part of it that we're

23   challenging.

24        THE COURT:  That's fine.  Look, I don't care if you

25   want to say, it applies to one, two, three, or it doesn't apply

1   to four, five, six.  Ultimately, it's the same result.  You

2   gentleman talk, and I am fine with the -- I understand where

3   you are trying to get to, and I am fine with accommodating

4   that; whether we're talking about, you know, these are in or

5   those are out.  I don't -- I see them six of one, half dozen of

6   another, and frankly am not terribly concerned about which way

7   it's framed, but I will accommodate that.

8        MR. VAUGHAN:  Thank you.  One -- one other thing.

9        THE COURT:  Right.

10        MR. VAUGHAN:  Yesterday, Mr. Arrington filed, on

11   behalf of some clients, a Complaint in federal court related to

12   the large-capacity magazines law for the State of Colorado.  I

13   don't know if that's a -- considered a related case under the

14   court rules, to designate related cases, or that's a case that

15   might find its way to this Court.  I know it's been assigned to

16   Judge Babcock, but I'm not sure where it will go from there, if

17   he declines.  But I don't know whether the Court wants to

18   address there's potential for consolidating related cases?

19        THE COURT:  I understand the issue.  As it percolates,

20   it should percolate on its own, I suppose, is what I'm saying.

21        I do think that ... I think that it would be fair to

22   anticipate that a Senior Judge might decline, as is any Senior

23   Judge's right, and where it goes from there, is where it goes

24   from there.  I don't want to start talking about a case that

25   might be assigned to me, might be assigned to another Judge.  I

1    just -- I think we need to deal with that in the ordinary

2    course, but I am grateful for the heads up.

3            MR. VAUGHAN:  That's all I have, Your Honor.

4            THE COURT:  All right.  All right.  Then, I think we

5    are at the point where I will await your advice, with regard to

6    matters to be refined, in terms of the focus of the TRO and

7    otherwise the schedule is set, and we will proceed in that

8    manner, beyond that, we're in recess.  Thank you.

9            MR. VAUGHAN:  Thank you.

10           THE COURTROOM DEPUTY:  All rise.  Court is in recess.

11       (Recess at 11:00 a.m.)

12                      REPORTER'S CERTIFICATE

13

14       I certify that the foregoing is a correct transcript from
     the record of proceedings in the above-entitled matter.

15

16       Dated at Denver, Colorado, this 27th day of September,

17   2022.

18                           s/Tammy Hoffschildt

19                      _____

20                      Tammy Hoffschildt, FCRR,RMR,CRR

21

22

23

24

25