```
                    IN THE UNITED STATES DISTRICT COURT
                        FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-1685

ROCKY MOUNTAIN GUN OWNERS, et al.,

     Plaintiff,

vs.

TOWN OF SUPERIOR,

     Defendant.
```
_____

**REPORTER'S TRANSCRIPT**
VIDEO TELECONFERENCE

_____

Proceedings before the HONORABLE RAYMOND MOORE, Judge, United States District Court for the District of Colorado, occurring at 9:30 a.m., on the 16th day of September, 2022, in Courtroom A601, United States Courthouse, Denver, Colorado.

TAMMY HOFFSCHILDT, Official Reporter
901 19th Street, Denver, Colorado 80294
Proceedings Reported by Mechanical Stenography
Transcription Produced via Computer

**APPEARANCES**

Barry Kevin Arrington, Arrington Law Firm, 4195 Wadsworth Boulevard, Wheat Ridge, CO 80033 appearing for the Plaintiff.

Carey R. Dunne, The Law Office of Carey R. Dunne, PLLC, 114 East 95th Street, New York, NY 10128 and Antonio J. Perez-Marques, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017-3904, appearing in person, for the Defendant.

1  William James Taylor, Jr., Everytown Law, 450 Lexington
2  Avenue, Suite 4184, New York, NY 10271-0332, appearing via VTC, for the Defendant.

3

4          David B. Toscano, Davis Polk & Wardwell LLP, 450
5  Lexington Avenue, New York, NY 10017-3904 and Gordon Lamar Vaughan, Vaughan & DeMuro-Colorado Springs, 111 South Tejon
6  Street, Suite 545, Colorado Springs, CO 80903 appearing via audio only, for the Defendant.

7                          *  *  *  *  *

8                      **P R O C E E D I N G S**

9      (In open court at 9:34 a.m.)

10         *THE COURT:* Please be seated. Rocky Mountain Gun
11 Owners, et al, versus Town of Superior. We're here for a
12 status conference, which I believe I set next week -- next week
13 ... last week. Additionally, I have permitted various counsel
14 to appear remotely, and I have also learned that some of them,
15 may or may not have been successful in logging on, because the
16 system is far from perfect.

17         That being said, since each -- each side seems to have
18 a more than adequate number of attorneys representing them, I'm
19 comfortable going forward, in that, there are, at the very
20 least, counsel present for each side in the courtroom.

21         So, what I'm going to do, let me take appearances. I
22 will start with the plaintiff, in court. Then I will just
23 general -- generally ask whether there are any additional
24 plaintiff's counsel that are online, if they would simply
25 introduce themselves, as well. So, sir, please.

1          *MR. ARRINGTON:*  Thank you, Your Honor.
2   Barry Arrington, appearing for the plaintiffs.  I do thank the
3   Court for being open to remote appearances.  I live in -- near
4   Dallas --
5          *THE COURT:*  I hate them.  Don't get me wrong.  I can't
6   stand them, but I also think that there's not a whole lot of
7   substance going to go on here, and I don't need to, you know,
8   bang my chest and make people gather from near and far on short
9   notice.
10         *MR. ARRINGTON:*  Well, I got up at 3:30, this morning,
11  to be here, and so I'm glad to be here in person.
12         *THE COURT:*  So, that's the first lie you are telling
13  me; but in any event, Mr. Arrington, good morning to you.
14         Are there other counsel for the plaintiff's on the --
15  on the VTC system?
16         *MR. ARRINGTON:*  None, Your Honor.
17         *THE COURT:*  All right.  So for the defendants, please.
18         *MR. DUNNE:*  Carey R. Dunne, for the Town of Superior.
19  I won't go into my travel schedule, but I could compete with
20  his as well.  We were --
21         *THE COURT:*  Oh, you got up at 2:30, right?
22         *MR. VAUGHAN:*  Arrived last night, and I stayed at one
23  of your local establishment, and I'm here with my co-counsel.
24         *MR. PEREZ:*  Antonio Perez-Marques, also for the Town
25  of Superior, pro bono counsel.

1           *THE COURT:*  Good morning to both of you, and if there
2    are additional counsel for the Town of Superior, if they would
3    introduce themselves.
4           Let me -- let me put it this way.  Hold on, there's
5    somebody on video, whoever that is, on video, that I'm looking
6    at, in the red tie, let me have him introduce himself first,
7    and then well get to those who are only on the audio channel.
8    Video counsel.
9           *MR. TAYLOR:*  Yes, Your Honor.  Thank you.  William
10   Taylor, also for the Town of Superior.
11          *THE COURT:*  And now on the audio-only channel.
12          *MR. VAUGHAN:*  Gordon Vaughan, on behalf of Superior.
13          *THE COURT:*  All right.  Good morning to all of you.  I
14   think you know what's going on, in terms of the sequence of
15   events, but let me just do something by way of a brief
16   background.
17          This matter was filed, I want to say, July or right --
18   late -- June, early July.  It was in that timeframe.  At that
19   time, a TRO entered, due to indicia of pending enforcement, and
20   I thereafter had a status conference in which we came to an
21   understanding, which is, that the matter could continue,
22   subject to the TRO, with some modifications, until we could get
23   to the preliminary injunction hearing; that's fine.
24          In fairness to counsel, I can't remember whether it
25   was plaintiff's counsel or defendant's counsel, at that status

1    conference, I believe, mentioned that there were some other
2    cases that would be coming my way, and my response to that was,
3    *I don't know what you are talking about,* but, you know
4    whatever.
5         I now know what you were talking about, because there
6    are, I believe, three other cases that one could say are
7    closely related to this one.  Two of them are before
8    Judge Sweeney, and one of them is in front of Judge Rodriguez,
9    and if I have got this right, and it's not important that I
10   necessarily do, I believe Judge Rodriguez has City of Boulder,
11   I believe Judge Sweeney has County of Boulder and Louisville;
12   that being said, there's also some other cases that are
13   starting to, kind of, pop up in the court.  It is not by this
14   plaintiff, and it is not represented by these defendant -- this
15   defendant's counsel; but there's a pro se case, I think, in
16   front of ... don't hold me to this.  I want to say there may be
17   a pro se case in front of Judge Brimmer, and -- Chief Judge
18   Brimmer.  There may be another case in front of Judge Wang.
19   But, there are some of these other cases, and so I received,
20   from the parties, a Motion To Consolidate.  Understandable.
21   Because I do think that, at least in terms of what I will call
22   the *Moore, Rodriguez and Sweeney cases*, there's one set of
23   counsel on each side that's going to be the same, regardless of
24   which particular town or local or county ordinance we're
25   looking at.

1           Notwithstanding that, what was unclear to me was
2    whether or not, what I was faced with was the -- the normal,
3    kind of, confined universe, *Here are a number of cases, but*
4    *they are all -- they all should be consolidated for sufficiency*
5    *purposes*, or I'm pulling on the thread of a sweater or blanket
6    that's going to just keep coming, and it was unclear.
7           I will tell you that what I did was to have -- to
8    initiate conversations with the Chief Judge, Chief Judge
9    Brimmer, with Judge Sweeney and Judge Rodriguez.  I'm not going
10   to get into the content of those discussions, because those
11   discussions between District Judges, in my view, stay between
12   District Judges; that being said -- and I am not going to sit
13   down and say to you, because I think it would be wrong, that we
14   came to some kind of group decision, because that's not right
15   either, but informed by my discussions, I'm not going to
16   consolidate and it's as simple as that.
17          Now, I also recognize that that creates some degree of
18   inefficiencies, and we will talk about that in a minute, but
19   there is a motion, Unopposed Motion To Consolidate the cases,
20   and I am not going to take them.  I'm going to leave them
21   unconsolidated.
22          There's a motion -- that's **ECF Number 40**, Cathy.
23   There's a Joint Motion To Vacate Response And Briefing
24   Schedule.  I am going to grant that and vacate those.
25          It is not my intention in denying the Motion To

1  Consolidate, to create chaos or inefficiencies.  What I'm going
2  to do is I'm going to say I'm going to give you three weeks,
3  and I am not speaking for Judge Rodriguez or Judge Sweeney, but
4  I do think that the parties and counsel can come together, in
5  terms of a briefing scheduling, in the respective venues.
6       I don't care if I'm going first, second or third.  I'm
7  not speaking for any other Judges, but in terms of
8  efficiencies, I don't know whether or not the way this,
9  ultimately, presents is -- would be that the vast majority of
10 the decision would be on the basis of briefing that was
11 provided or whether there is a little or a lot of testimony of
12 witnesses that you intend to bring in.  I can envision it in
13 either way.
14      You can envision it as, you know, kind of, Briefs on
15 the history of guns in the United States, and you can en -- I
16 can envision it as people having expert or other witnesses, as
17 well.
18      I'm not looking for creating conflicts in timing,
19 between myself and the other Judges, and I am not looking for
20 duplication, and so what I mean by that is if, in fact, at the
21 end of the day, my briefing and scheduling went first, and in
22 the course of that you wanted to ask some additional questions
23 about Louisville or Boulder, even though it's not something
24 that I would be doing, I would be fine with that.
25      I can't speak to whether Judge Sweeney or

1   Judge Rodriguez would say, *Yeah, give me those transcripts*, *and*
2   *I will -- and I would accept those*.  I can tell you that if I
3   were not first, I would accept transcripts, and give you the
4   opportunity to supplement them, either with some limited
5   additional testimony or with affidavits.
6         What I'm trying to communicate to you, is that
7   although I'm not consolidating them, I'm not trying to make
8   this a train wreck.
9         I don't think there's any advantage or real ability to
10  courtroom shop, Judge shop.  I mean ... you might have three
11  unknowns.  You might have one cloudy and two unknowns.  I'm not
12  sure whether I'm cloudy or unknown, but obviously, the thing
13  that is valued, by way of consultation, is that it it enables
14  counsel to, kind of, focus and avoid unnecessary duplication of
15  effort, unnecessary expense.
16         There's also, I get it, an avoidance of the
17  possibility of conflicting rulings; and yeah, that's there.  If
18  anybody thinking that the District Court is going to have the
19  last say on this, they are kidding themselves.  So, you know,
20  come on.
21         So, rather than just issue a text-only entry, I
22  decided that what I would do is bring you in and tell you what
23  I was doing and to give you, although not looking for your
24  understanding or acceptance of it, at least an indication that
25  it's not, you know, some pique or just kind of little tantrum

1  by me of not wanting to consolidate for reasons, I don't know,
2  that I don't want the other cases.  It's not that.
3         It is that after consultation with my colleagues, I'm
4  going to go forward in this way, and what I will anticipate is
5  that the others would do the same, although I do not speak for
6  them.
7         So, rather than just drop that on you, and then have
8  you faced with, *Well, what are we doing, in terms of these*
9  *Briefings and all of the rest of it*, I wanted to, kind of,
10 bring you together, because the additional reality is the more
11 I bring you together, the more you talk.  At the very least,
12 you get up early and maybe meet at the same coffee shop or take
13 the elevator down; but what I'm looking for, and I will listen
14 to you, because I'm not trying to be difficult, here, what I'm
15 looking for is leaving to you, I'm not just going to say, *Okay.*
16 *Here's your new schedule, live or die with it*.  I'm going to
17 give you the opportunity to talk to each other.  I think you
18 could propose to me a briefing schedule and hearing schedule,
19 if you need it, and I will give you three weeks to do it.
20         I don't care what -- I don't know what the other
21 Judges are doing.  I have not tried to follow their cases,
22 beyond saying, *Who has got what*, and I am not suggesting, to
23 you -- in fact, I'm telling you the -- the exact opposite, is
24 true.  I'm not suggesting to you that there has been some kind
25 of joint meeting or plan or there's some secret sauce that you

1  don't see, where Rodriguez and Sweeney and I have this all

2  plotted out.  If you believe in those things, get off the weed,

3  relax, it's not true.  All right.

4  　　　　　So -- but I do think that allowing counsel an

5  opportunity to, kind of, think about this and structure it in a

6  way that makes sense, even though it's not consolidated in a

7  way that's best for efficiency purposes, is something that I'm

8  not opposed to, and I am not here to make people's lives more

9  difficult by denying the Motion To Consolidate.

10 　　　　　So, I'm open to options, including whether three weeks

11 is enough.  Let me just -- I just want to sit down and do this,

12 as opposed to -- do this live body to live body, opposed to

13 just kicking out a TOE, and saying deal with it.

14 　　　　　*MR. DUNNE:*  We fully appreciate what you just

15 described.  I think it makes sense.  I can give a rather

16 unconsidered response for our side at least --

17 　　　　　*THE COURT:*  Why not.

18 　　　　　*MR. DUNNE:*  I'm sure the Court is not expecting more,

19 at this point.

20 　　　　　*THE COURT:*  No, no.  I'm not.

21 　　　　　*MR. DUNNE:*  First and foremost, just to be clear, for

22 the record, we are representing Superior as the Court knows,

23 and not the other three defendants, in the different

24 localities.

25 　　　　　*THE COURT:*  And you are correct.  As I'm thinking back

1  on it, I think what I meant to say, or at least what is in my
2  head, is that there was some, I don't know -- I don't want to
3  make it a joint decision of the plaintiffs in the cases --
4  plaintiffs -- of the cities and the municipalities in the cases
5  I have just said, but I do think there was some coordination,
6  and I don't know how much beyond that it goes.
7        *MR. DUNNE:*  I can clarify, Your Honor.  In our papers,
8  I believe, we signaled that were there to be consolidation, we
9  expect that there would be joint representation and basically
10 one defense team.  Without consolidation, that has not been
11 agreed to, which is why I say, *We don't speak for the other*
12 *parties, in their now-still-separate proceedings*; that said, I
13 understand the Court's decision and the hope for coordination,
14 if not consolidation that still has hoped to proceed.
15       *THE COURT:*  Don't get me wrong, I'm not -- it's not
16 *hope* on my end.  I don't care whether -- whether you --
17 exactly.  I'm -- I just don't want to be in a posture where I'm
18 hamstringing either or any of these municipalities.  I want to
19 give them an opportunity to do things in the most efficient way
20 possible, but I'm not trying to, um ... achieve any particular
21 outcome.
22       *MR. DUNNE:*  Frankly, what I appreciate most is the
23 Court's decision to allow the parties to try to work out an
24 agreed schedule, which we have been very good at doing, to
25 date, and I'm sure that will continue.

1      *THE COURT:*  What else are you going to do at 2:30 in
2   the morning?
3      *MR. DUNNE:*  In light of the new procedural posture,
4   which is more complicated, frankly, than we expected, as you
5   might anticipate.
6      *THE COURT:*  I do, I appreciate that.
7      *MR. DUNNE:*  But if that allows us to come up with a
8   new plan, I think that's very sensible.
9      As a footnote, I would say, in answer to an
10  observation that you made or implicit question that you made, I
11  think, from the defense point of view, we need more time than
12  perhaps the plaintiffs and maybe even the Court anticipates,
13  both on the briefing and development of expert reports and that
14  kind of thing, given the underlying complexity of the record
15  that needs to be developed, here, as well as on the testimonial
16  aside.
17     As I sit here, I can't predict what we think a hearing
18  on the PI motion would look like, whenever that happens, but I
19  do anticipate, that if the Court permits it, would indeed
20  include not insubstantial amount of expert testimony, for
21  example.
22     So, I think the point is that we do appreciate the
23  opportunity, with that in mind, come back to you, Your Honor,
24  with a new schedule, that now allows us to proceed on these
25  forefronts, but hopefully with, you know, a degree of

1    coordination that does not create the duplication that you are
2    referring to, either.
3            To that end --
4            *THE COURT:*  And that's fine.  Again, the only thing
5    that I can caution you about is, the only one that is speaking,
6    right now, kind of mirroring your, *You only speak for the Town*
7    *of Superior, I only speak for me*; but that being said, I can
8    tell you that I have not had any discussions with my
9    colleagues, but I can't envision, you know, some resistance to
10   giving you an opportunity to make things work in a way that is
11   sensible for the litigants, as well as the Court.
12           *MR. DUNNE:*  And to that end, Your Honor, don't hold me
13   to this, because I have not discussed it with anybody but
14   myself, as of now.  One could imagine a scenario in which the
15   parties get together and, basically, come up with a master
16   briefing and potential hearing schedule, perhaps, which, you
17   know, mirrors that which we've already suggested, but that
18   would take place, simultaneously, in the four proceedings, but
19   on a similar, or even perhaps, identical timetable, so that
20   Briefs get filed at the same time, in each of the four courts,
21   assuming it's approved by each of the four Judges; that would
22   permit us to, basically, replicate what we had been imagining;
23   not on that particular dates and timings, but the idea being it
24   would be treated as, virtually, a consolidated proceeding,
25   timing-wise, but there would be separate proceedings for terms

1  of each adjudication.

2  *THE COURT:*  I don't have a problem with that.  Again,
3  I'm not trying to dictate an outcome.  All I'm trying to do is
4  be transparent.

5  *MR. DUNNE:*  Understood, Your Honor.  We appreciate if
6  there are more cases having been filed, or to be filed, I mean,
7  our lives might get complicated even further; that said, these
8  four cases are so clearly in tandem, I don't think that we
9  should anticipate that the pro se case, that the Court
10 mentioned, would need to be coordinated --

11 *THE COURT:*  I don't think it is.  I mean, again, I
12 don't want to get into discussions of other Judges' cases, but
13 at least based on my understanding of it, I'm not even saying
14 it's a Boulder County case.  I'm just saying that there's
15 enough rattling around in the bushes on the margins of things
16 that, essentially, without the Court coming to a joint
17 decision, because this is my decision, informed by the
18 decision -- by the thoughts of my colleagues, that I'm not
19 going to consolidate it, formally.  I will work with you, to
20 accomplish whatever makes the most sense, in terms of
21 efficiencies.

22 *MR. DUNNE:*  Understood, Your Honor.  Frankly, another
23 footnote, along these lines, not that it's binding on any of
24 the Courts here, as I'm sure the Court knows, there are other
25 proceedings that are not dissimilar, being filed elsewhere

```
 1   across the country, and you know --
 2         THE COURT:  My God, you mean to say, this is not the
 3   only place this challenge is being raised?
 4         MR. DUNNE:  It's the most important place.
 5         THE COURT:  Absolutely.  In front of the most
 6   important Judge, right?  With the most important counsel.
 7         MR. DUNNE:  That's why we get up at 2:30 in the
 8   morning, Your Honor.
 9         THE COURT:  All right.  There you go.  Mr. Arrington,
10   I'm not looking for anything in particular.  If there's a
11   comment or a thought or that you want to share, I'm more than
12   happy to listen to.
13         MR. ARRINGTON:  No.  I think that I understand where
14   the Judge is going on this, and I have got my marching orders.
15         THE COURT:  Is three weeks enough or a month?
16         MR. DUNNE:  To be clear, this is the time in which we
17   need to work out, among the parties, not with plaintiff's
18   counsel, but with the other localities' counsel, et cetera, the
19   master plan for going forward, at least briefing-wise, I think
20   four weeks would be great.  In other words about --
21         THE COURT:  October 17.
22         MR. DUNNE:  And --
23         THE COURT:  That's a Monday, to destroy the weekend
24   before.
25         MR. DUNNE:  The weather that weekend in Denver is
```

1   supposed to be great, Your Honor.

2           Let me ask, to be clear, that is the date on which we
3   are due to produce and suggest to the Court a master schedule,
4   of the sort we have been describing?

5           *THE COURT:*  Correct.

6           *MR. DUNNE:*  Got it.  Thank you.

7           *THE COURT:*  Again, you will have to approach each of
8   my colleagues to see what their view is, with regard to that,
9   but regardless of their view, for me, let me know what -- what
10  your thoughts are.  That's all I have.

11          *MR. PEREZ:*  Your Honor, one small clarification, if I
12  may?  The Court is granting the Motion To Vacate.  We do have
13  one other pending deadline, which is our deadline to answer.
14  We did, indeed, chat with plaintiff's counsel, in the hallway,
15  before the conference, and they have no objection to us holding
16  that in abeyance while the PI briefing proceeds forward.

17          So, we wanted to confirm, with the Court, whether we
18  can treat the answer deadline as being vacated, for the time
19  being, while we work out that schedule?

20          *THE COURT:*  Is that correct?

21          *MR. ARRINGTON:*  Yes, Your Honor.

22          *THE COURT:*  I will agree to that, as well.  I'm not
23  quite sure that there's a lot to be learned by -- well, there's
24  a lot to be accomplished by delaying an answer; that being
25  said, I'm not expecting there to be a whole lot of focus on

```
 1   anything but the PI.  So, I'm fine.
 2           MR. DUNNE:  In our case, as well as the other three
 3   cases, I believe, at this point, Amended Complaints have been
 4   filed, and it's, frankly, I think, procedurally, this is the
 5   least of our concerns.  Procedurally, I think this is the least
 6   of our concerns.  If we can put that in abeyance, whenever that
 7   needs to be filed, we will file it.
 8           THE COURT:  That's fine.  Don't let me lose sight of
 9   it completely.  All right.  Anything else?
10           MR. ARRINGTON:  Nothing from the plaintiff,
11   Your Honor.
12           THE COURT:  All right.  Recess.  Thank you all.
13           THE COURTROOM DEPUTY:  All rise.  Court is in recess.
14      (Recess at 9:58 a.m.)
15                        REPORTER'S CERTIFICATE
16
17       I certify that the foregoing is a correct transcript from
     the record of proceedings in the above-entitled matter.
18
19       Dated at Denver, Colorado, this 27th day of September,
20   2022.
21                             s/Tammy Hoffschildt
22                             _____
                               Tammy Hoffschildt, FCRR,RMR,CRR
23
24
25
```